UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION
DIMITROULEAS/SNOW

NICOLE JOHNSON, on behalf of herself
and those similarly situated,

    Plaintiff,

v.                                   Case No. 0:21-cv-60775-WPD

GONZO MARKETING SERVICES,
LLC d/b/a GMS CONNECT, a Florida
Limited Liability Company,

    Defendant.
_____/

## SETTLEMENT AGREEMENT

This Settlement Agreement ("Agreement") is made and entered into by, between, and among Nicole Johnson ("Johnson") and Gonzo Marketing Services, LLC d/b/a GMS Connect, a Florida Limited Liability Company ("GMS Connect")(collectively the "Parties"). In consideration of the following promises, the Parties agree as follows:

WHEREAS, Johnson formerly worked with GMS Connect;

WHEREAS, Johnson has asserted certain claims against GMS Connect based upon and arising out of her working relationship with GMS Connect in a lawsuit styled *Nicole Johnson, on behalf of herself and those similarly situated v. Gonzo Marketing Service, LLC d/b/a GMS Connect, a Florida Limited Liability Company*, Case No.: 0:21-cv-60775-WPD pending in the United States District Court Southern District of Florida, Fort Lauderdale Division (the "Lawsuit");

WHEREAS, Johnson has been represented in the Lawsuit by Carlos Leach, Esq. of The Leach Firm, P.A. ("Johnson's Counsel"); and

WHEREAS, GMS Connect has denied Johnson's allegations and has denied liability for the claims she asserted in the Lawsuit;

WHEREAS, the Parties, in order to avoid the time, expense and uncertainty of litigation, each desire to settle, to compromise, and to resolve fully and finally any and all claims and disputes, whether known or unknown, which Johnson may have against GMS Connect from the

_NJ_                                                                                                     _____
Johnson                                                                                                          GMS Connect

**EXHIBIT A**

beginning of time until the date of this Agreement, arising out of Johnson's work with GMS Connect, the end of her work with GMS Connect.

NOW THEREFORE, for and in consideration of the mutual releases, covenants, and undertakings hereinafter set forth, and for other good and valuable consideration, which each Party hereby acknowledges as sufficient, it is agreed as follows:

1. **Recitals**. The above recitals are true and correct and are incorporated below as if fully set forth therein. This Agreement is a formalization of the essential terms verbally agreed upon by the Parties.

2. **Non-Admission of Liability**. GMS Connect denies any wrongdoing whatsoever as to Johnson and her work with GMS Connect, and this Agreement is made solely for the purpose of compromising disputed claims and avoiding the time, expense and uncertainty of litigation. It is expressly understood and agreed that nothing contained in this Agreement shall constitute or be treated as an admission of any wrongdoing or liability on the part of GMS Connect. In particular, the Parties agree and stipulate that Johnson is not entitled to any unpaid wages as alleged in the Lawsuit, but is being compensated for the purpose of settling any actual or potential FLSA claim alleged in the Lawsuit, irrespective of what claim or claims a Court may determine is or are resolved by this Agreement.

3. **Settlement Payment**. GMS Connect will provide the consideration described in this paragraph in consideration for and in exchange for Johnson's promises, agreements, and obligations set out below. GMS Connect will pay to Johnson a total sum, before taxes, of **NINE THOUSAND NINEHUNDRED DOLLARS AND ZERO CENTS ($9,900.00)** in aggregate ("Settlement Payment"), to be paid as follows:

   a. One check made payable to Nicole Johnson in the gross amount of **NINE HUNDRED DOLLARS AND ZERO CENTS ($900.00)**, minus appropriate tax withholdings and deductions, for alleged back pay, for which GMS Connect will issue an IRS Form W-2 in the ordinary course of business. Johnson will provide a completed IRS Form W-4 form before the issuance of a check; and

   b. One check made payable to Nicole Johnson in the gross amount of ONE **THOUSAND DOLLARS AND ZERO ($1,000.00)**, from which no taxes or other deductions will be withheld, for other compensatory damages arising out of pain and suffering, for which GMS Connect will issue an IRS Form 1099 in the ordinary course of business. In accepting this check, Johnson acknowledges and represents that she has not obtained, received, or paid for medical or psychological treatment in connection with any allegation in the Lawsuit. Johnson will provide a completed IRS Form W-9 form before the issuance of a check; and

   c. Two checks, each in the amount of **FOUR THOUSAND DOLLARS AND NO CENTS ($4,000.00)** made payable to The Leach Firm, P.A. for a total amount of **EIGHT THOUSAND DOLLARS AND NO CENTS ($8,000.00)**, for Johnson's



Johnson                                                 GMS Connect

**EXHIBIT A**

Counsel's attorneys' fees and costs, for which GMS Connect will issue an IRS Form 1099 to in the ordinary course of business to Johnson's Counsel. Johnson's Counsel will provide a completed IRS Form W-9 form before the issuance of a check.

        d.      It is expressly agreed and understood that if the IRS or any other governmental entity or any court of competent jurisdiction determines that taxes, interest, penalties, and/or any other withholdings and/or deductions are due on all or a part of the payment made to Johnson as referenced herein, Johnson shall be solely responsible for the full payment of any such federal, state, and local taxes, interest, penalties, and/or withholdings and/or deductions as may be due from her. It is also expressly agreed and understood that GMS Connect bears no responsibility or liability whatsoever with regard to whether all or part of the consideration for this Agreement is determined to be subject to taxation or other withholding or reporting. Johnson further agrees to indemnify and hold GMS Connect, its parents, subsidiaries, successors, affiliates, and assigns harmless for any liability for any and all taxes, penalties, interest, and/or any other withholdings and/or deductions which are or may become due from her as a result of the Settlement Payment.

        e.      Except as specifically provided in this Agreement, no additional wages, insurance, other benefits, allowances, bonuses, other compensation, or expenses of any sort will be paid to Johnson.

4.    **Timing of Payments; Rejection of Settlement Agreement.** The Parties agree on the following payment schedule:

        a.      The payment of the $900.00 to Johnson with taxes withheld, as set forth in section 3a. above and one check for $4,000.00 to the Leach Law Firm shall be made within seven (7) days of the latter of the latter of 1) receipt by GMS Connect's Counsel of Johnson's and Johnson's Counsel of the required Forms W-9 and/or W-4 as set forth above, and 2) the filing of this Settlement Agreement along with the Joint Motion for Approval of the Settlement.

        b.      The payment of the $1,000.00 check to Johnson, without taxes withheld, as set forth in section 3b. above and the second check for $4,000.00 to the Leach Law Firm shall be made within seven (7) days of the latter of 1) Court approval of the settlement and 2) Entry of Dismissal with Prejudice of the Lawsuit.

        c.      In the event that the Court refuses to approve the settlement because of the general release and/or non-disparagement clauses, the Parties agree that the amount due to Johnson under 3b. above, will be reduced to $900.00 and that they will cooperate in filing another settlement agreement and joint motion to dismiss. Payment of the $900.00 to Johnson and the $4,000.00 to the Leach Law Firm will be made within seven (7) days of the latter of 1) Court approval of the revised settlement agreement and 2) Entry of Dismissal with Prejudice of the Lawsuit.

NJ
_____
Johnson

_____
GMS Connect

**EXHIBIT A**

5. **Valuable Consideration**. Johnson acknowledges and agrees that payments provided in paragraph 3 of this Agreement entitled "Settlement Payment" are valuable consideration to which she would not otherwise be entitled.

   a. Specifically, the amount paid under paragraph 3(a) is intended to compensate Johnson for any and all back pay to which she was or could have been entitled, including but not limited to any and all amounts that could be considered due as "unpaid wages" to the extent that a Court were to determine that Johnson would have been owed any amounts under the FLSA and

   b. The amount paid under paragraph 3(b) is wholly unrelated to any actual or potential "unpaid wage" claim, and to which Johnson is not otherwise entitled. Thus, Johnson agrees that the amount in paragraph 3(b) is sufficient consideration for any claimed liquidated damages and for the general waiver and non-disparagement clauses in this Agreement.

6. **Voluntary Dismissal with Prejudice.** The Parties agree that they will file a Joint Motion for Approval of Settlement which will seek dismissal with prejudice of the Lawsuit, within fifteen (15) calendar days of the last Party's execution of this Agreement.

7. **No Other Filing of Claims**. Johnson represents that she has no charges of discrimination, complaints, or other accusatory pleadings presently pending against GMS Connect based upon or arising out of any aspect of her work with GMS Connect or separation therefrom, and has not authorized anyone else to raise such claims on her behalf. Johnson further agrees that she waives the right to recovery of any monetary award, should any federal or state agency file a suit, charge, claim or action against GMS Connect with respect to her work with GMS Connect or separation therefrom.

8. **Johnson's Duties and Representations**.

   a. <u>Johnson's Complete and Full General Release of All Claims</u>. In consideration for the benefits granted in Paragraph 3 above, Johnson, on behalf of herself, her agents, attorneys, representatives, assigns, heirs, family members, executors, and administrators, hereby irrevocably releases and discharges GMS Connect, including its current and former officers, directors, managers, employees, attorneys, insurers, affiliates, parents, subsidiaries, divisions, predecessors, successors, assigns, owners, stockholders, administrators, directors, officers, employees, and agents (the "Released Parties") from any claims or liability of any kind, whether known or not, arising out of, but not limited to, her work with GMS Connect and all written and oral agreements with GMS Connect, including any related damages, relief, attorneys' fees, and costs. This general release applies to any claims arising under, but not limited to: Title VII of the Civil Rights Act of 1964, as amended ("Title VII"); the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. §12101, *et seq.*; the Sarbanes-Oxley Act of 2002; 42 U.S.C. §§1981 through 1988; the Florida Civil Rights Act of 1992 ("FCRA") (Fla. Stat. §760, *et seq.*); the Florida Private Whistleblower Act, (Fla. Stat. §§448.101-448.105); the Employee

Retirement Income Security Act of 1974 ("ERISA"), as amended; 29 U.S.C. §1001, *et seq.*; the Fair Credit Reporting Act, 42 U.S.C. §§1981, 1983 or 1985, and their amendments; the Consolidated Omnibus Budget Reconciliation Act of 1985 ("COBRA"), 29 U.S.C. §1161 *et seq.*; United States Bankruptcy Code, Protection Against Discriminatory Treatment, 11 U.S.C. §525; the Fair Labor Standards Act, ("FLSA") 29 U.S.C. §201 *et seq.*, as amended; the Age Discrimination in Employment Act, ("ADEA"), 29 U.S.C. §626, *et seq.*, as amended; the Family and Medical Leave Act ("FMLA"); the Occupational Safety and Health Act ("OSHA"), as amended, 29 U.S.C. § 651, *et seq.*; the National Labor Relations Act, as amended, 29 U.S.C. §141, *et seq.*; the Immigration Reform Control Act, as amended, 29 U.S.C. §1801, *et seq.*; the Florida Equal Pay Act (Fla. Stat. § 725.07); claims under Florida's Workers' Compensation Anti-Retaliation Provision (Fla. Stat. § 440.205); Florida's Wage Rate Provision (Fla. Stat. § 448.07); Florida Minimum Wage, Annual Wage Adjustment (Fla. Stat. § 448.110); Florida's Attorney's Fees Provision for Successful Litigations in Suits for Unpaid Wages (Fla. Stat. §448.08); the Equal Pay Act, the Uniformed Services Employment and Re-Employment Act, the False Claims Act (including the qui tam provision thereof), the Consolidated Omnibus Budget Reconciliation Act of 1986, and any other federal, state or local law, regulation or ordinance, including for employment discrimination on any basis, hostile working environment, retaliation, wrongful discharge, retaliatory discharge, constructive discharge, unsafe working conditions, breach of express or implied contract, whistleblower, breach of collective bargaining agreement, breach of implied covenant of good faith and fair dealing, detrimental reliance, promissory estoppel, defamation, negligence, negligent or intentional misrepresentation, invasion of privacy, interference with economic gain or contractual relations, any intentional and negligent infliction of emotional distress, any action in contract or tort, or any common law or equitable basis of action, based on events occurring prior to and up through the execution of this Agreement.

b.   Johnson knows, acknowledges, and agrees that this Agreement is a general and all-encompassing agreement. Johnson agrees that there might have been claims about which she did not know and she further expressly waives and assumes the risk of any and all claims for damages which may exist as of the Effective Date but which Johnson does not know of or suspect to exist, whether through ignorance, oversight, error, negligence, or otherwise, whether of Johnson or any other person, and which, if known, would materially affect her decision to enter into this Agreement.  Even knowing that, Johnson is signing this Agreement.  However, this general release does not prohibit Johnson from seeking judicial review of the age discrimination release in this Agreement.

c.   Notwithstanding anything herein to the contrary, nothing in this Agreement shall be construed to prohibit Johnson from filing a charge or complaint with, or assisting, participating or testifying in, any investigation or proceeding conducted by, the Equal Employment Opportunity Commission, the Department of Labor, the National Labor Relations Board, or any comparable state or local agencies.  Further, nothing in this Agreement is intended to interfere with Johnson's rights under Section 7 of the National Labor Relations Act.  Notwithstanding the foregoing, Johnson agrees to waive



_____
Johnson

_____
GMS Connect

Page **5** of **9**

**EXHIBIT A**

her right to recover individual monetary damages in any charge, complaint, or lawsuit filed by Johnson or by anyone else on her behalf, except where such a waiver of individual relief is prohibited by law.

9. **Representations and Warranties Regarding the FMLA, FLSA, and Other Injuries**. Johnson represents and expressly warrants that she has received any and all wages and commissions for work performed for GMS Connect and all overtime compensation and FMLA leave to which she may have been entitled, and that she is not currently aware of any facts or circumstances constituting a violation by GMS Connect and/or Released Parties of the FMLA or FLSA. Johnson further represents and warrants that she did not suffer any workplace injuries while working for GMS Connect. Johnson specifically warrants that she has discussed this issue and all underlying facts with her attorney and, in consultation with her attorney, makes these representations. **To the extent any court of competent jurisdiction or administrative agency, such as the Department of Labor, were to determine and/or has determined that Johnson is entitled to payment from GMS Connect for the time period encompassed in the Lawsuit, Johnson expressly agrees that the amount paid under paragraph 3(a) and 3(b) will be used to set off any and/or all of the amount that the Court or agency determines she is owed.**

10. **No Contracting, Employment, or Reinstatement**. Johnson agrees that she will never in the future contract with GMS Connect, or apply for, solicit, or accept employment with GMS Connect or Released Parties, or apply for or accept placement with GMS Connect or Released Parties and that GMS Connect and Released Parties have no obligation, contractual or otherwise, to rehire, re-employ, or recall Johnson in the future. In the event that Johnson accepts a contract for work with or employment with any entity in violation of the foregoing provision, whether or not such violation was intentional, she agrees that her employment will be terminated immediately.

11. **Non-Disparagement**. Johnson agrees not to criticize, denigrate or otherwise disparage or cause disparagement, or make any disparaging remarks ("Disparage"), to the media, the general public, or to any other person or entity about GMS Connect or Released Parties. In particular, but without limitation, Johnson will not disparage GMS Connect or Released Parties to any of GMS Connect's current, former, or prospective customers or clients or any of GMS Connect's current or former employees. Johnson further represents and agrees that she has not and will not engage in any conduct or take any action whatsoever to cause or influence any person or entity, including but not limited to, any past, present, or prospective employee of, or applicant for employment with GMS Connect, to initiate litigation, assert any other kind of claim, or take any other kind of adverse action against GMS Connect or Released Parties. Johnson acknowledges that this provision constitutes a material term in this Agreement, without which GMS Connect would not enter into this Agreement and GMS Connect retains all rights to pursue any and all claims or actions against Johnson as a result of any disparaging remarks made in violation of this paragraph or otherwise. GMS Connect agrees to provide verification of employment and neutral job references for Johnson upon request.

12. **Non-Admission**. The Parties to this Agreement agree that nothing herein is an admission by any Party hereto of any wrongdoing, either in violation of an applicable law or



Johnson

GMS Connect

otherwise, and that nothing in this Agreement is to be construed as such by any person. GMS Connect specifically denies that it or its employees, supervisors, attorneys, representatives or agents have ever committed any wrongdoing whatsoever with respect to Johnson or otherwise. It is expressly understood and agreed that none of the Parties shall be deemed to be a "prevailing party" for the purposes of any fee-shifting statute, rule or agreement.

13. **Costs and Fees**. Other than payment of the Settlement Amount, each Party shall bear her or its own costs and attorneys' fees incurred in this matter.

14. **Knowing and Voluntary Agreement**. By executing this Agreement, Johnson agrees and acknowledges that she is aware of the terms of this Agreement, its meaning and effect, and the claims she is waiving.

15. **Assumption of Risk of Mistake**. The Parties hereby expressly assume the risk of any mistake or fact or that the true facts might be other or different from facts now known or believed to exist, and it is the express intent of the Parties to forever settle, adjust and compromise the disputes raised by the Action without regard to who may or may not have been correct in their respective understandings of the facts or the law relating thereto.

16. **Complete Agreement**. It is understood and agreed that this Agreement sets forth the entire agreement between the Parties and there exist no other agreements, whether oral or written, between them relating to any matters covered by this Agreement.

17. **Construction; Venue**. This Agreement shall be governed by and construed in accordance with the laws of the State of Florida and venue shall be in any state or federal court of competent jurisdiction in Orange County, Florida.

18. **Waiver of Breach**. The waiver by either Party of a breach of any provision of this Agreement by the other Party shall not operate or be construed as a waiver of any subsequent breach of that or any other provision by said Party.

19. **Severability**. If any provision of this Agreement is held to be invalid, then the remaining provisions shall remain in full force and effect. However, if the release of all claims described in Paragraph 7 of this Agreement (and its sub-paragraphs) is in any respect determined to be invalid or unenforceable, then, at GMS Connect's option, Johnson shall be required (and promises and agrees) to repay to GMS Connect, on demand, all amounts paid by GMS Connect pursuant to Paragraph 3 above, and the Parties shall revert to the position held by each prior to the signing of this Agreement.

20. **Signatures and Execution**. The Parties agree that separate copies of this Agreement shall constitute original documents that may be signed separately but which together will constitute one single Agreement. The Parties agree that this Agreement will not be binding on any party, however, until signed by all Parties or their representatives.

_NJ_  
Johnson

_[signature]_  
GMS Connect

**EXHIBIT A**

21. **Modification**. The Parties hereto agree that this Agreement may not be modified, altered, or changed except by a written agreement signed by the Parties hereto.

22. **Effective Date**. This Agreement shall be effective upon execution by all Parties.

23. **Parties' Non-Reliance**. Each Party warrants and represents that she/it has consulted with her/its attorneys regarding the effect of this Agreement, and that she/it has executed this Agreement fully aware of its content, purpose, and effect, based upon her/its sole judgment, belief, and knowledge, and upon advice of her/its own attorneys, and that she/it is not relying on representations or statements made by another Party to this Agreement or by anyone representing another Party to this Agreement. Each Party acknowledges that neither another Party, nor any agent or attorney of another Party, has made any promise, representation, or warranty whatsoever, express or implied, not contained herein concerning the subject matters hereof to induce her/it to execute this Agreement, and acknowledges that she/it has not executed this Agreement in reliance upon any such promise, representation, or warranty. Each Party acknowledges and agrees that she/it has been represented by independent counsel of her/its own choice throughout all negotiations which have preceded the execution of this Agreement, and that she/it has entered into and executed this Agreement with the consent and upon the advice of said independent counsel. This Agreement is executed voluntarily by each Party, without any duress or undue influence.

24. **Attorneys' Fees and Costs**. In the event that any of the Parties hereto should bring any action, suit or proceeding against any of the other Parties hereto to enforce this Agreement, the validity hereof, any of the terms or provisions hereof, or any of the matters released hereby, or should any of the Parties assert this Agreement as an affirmative defense in an action brought by the other Party, the prevailing Party in such action, suit or proceeding shall be entitled to recover from the other such Party reasonable attorneys' fees to be fixed by the court and costs incurred in connection therewith, including attorneys' fees and costs relating to any and all appeals or petitions taken with respect to any such action, suit or proceeding.

25. **Construction**. The Parties agree that any rule of construction that agreements are to be construed adverse to the drafter shall not apply herein. Should any provisions of this Agreement be declared or determined by a court or arbitrator to be illegal or invalid, the validity of the remaining terms shall not be affected thereby. The Parties intend for this Agreement to satisfy the provisions of the ADEA, as amended, as this Agreement shall always be construed or limited in conformity with such provisions.

26. **Cooperation**. The Parties hereto agree to execute any and all other documents and instruments in writing which may be reasonably necessary or proper to effectuate and carry out the purposes of this Agreement, including, but not limited to, a stipulation and/or motion as may be necessary to obtain court approval of this Agreement.

NJ
_____
Johnson

_____
GMS Connect

**EXHIBIT A**

THE PARTIES ACKNOWLEDGE THAT THEY HAVE READ AND UNDERSTAND THE ENTIRE AGREEMENT, CONSISTING OF NINE (9) PAGES, HAVE HAD A REASONABLE PERIOD OF TIME TO CONSIDER THIS AGREEMENT PRIOR TO ITS ACCEPTANCE, HAVE BEEN INSTRUCTED TO AND HAVE CONSULTED THEIR ATTORNEYS AS TO ITS CONTENTS AND EFFECT, AND ENTER THIS AGREEMENT KNOWINGLY AND VOLUNTARILY.

I HAVE READ THIS SETTLEMENT AGREEMENT AND RELEASE, AND, UNDERSTANDING ALL ITS TERMS, I SIGN IT AS MY FREE ACT AND DEED.

Date: 10/11/2021

_____
NICOLE JOHNSON

I HAVE READ THIS SETTLEMENT AGREEMENT AND RELEASE, AND, UNDERSTANDING ALL ITS TERMS, I SIGN IT ON BEHALF OF GMS CONNECT SERVICES, INC. AS THE FREE ACT AND DEED OF GMS CONNECT SERVICES, INC.

Date: 10/12/2021

GONZO MARKETING SERVICES, LLC D/B/A GMS CONNECT, A FLORIDA LIMITED LIABILITY COMPANY

Sign: _____
Print Name: Jeffrey Tovny
Title: COO

**EXHIBIT A**